## Pursifull's Adm'x v. Pursifull et al.

Nov. 21, 1944.

John E. Campbell and Thomas E. Sandidge for appellant.

Wilson & Wilson and George S. Wilson, Jr. for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

W. M. Pursifull died intestate February 16, 1939, and his widow, Grace Pursifull, qualified as administratrix of his estate. Since her qualification as administratrix, she has remarried, and is now Grace Pursifull Van Camp. On March 8, 1943, suing as the widow of W. M. Pursifull and as the administratrix of his estate, she brought an action in the Daviess circuit court to set aside a conveyance purporting to have been made during the lifetime of her husband and in which she did not join and to have her dower in the property assigned to her. James M. Pursifull, brother of her deceased husband and the sole beneficiary under the conveyance, the heirs of her deceased husband, the Inter-State Oil & Gas Corporation, and others were made defendants. A demurrer to the petition as amended was sustained, the plaintiff declined to plead further, and a judgment was entered dismissing the amended petition. A history of the transactions of W. M. Pursifull, which provide the background for the present litigation, may be found in the opinions of this court in the following cases: Cooper v. Keyes, 246 Ky. 268, 54 S. W. 2d 933; National Bank of Kentucky's Receiver v. Inter-State Oil & Gas Corporation, 246 Ky. 276, 54 S. W. 2d 736; and Pursifull v. Interstate Oil & Gas Corporation, 293 Ky. 152, 168 S. W. 2d 363.

It was alleged in the petition as amended that the appellant and W. M. Pursifull were married in 1921 and continued to live together as husband and wife until his death in February, 1939; that during coverture W. M. Pursifull became the owner of 13 or more producing oil and gas leases situated in Daviess and Ohio counties, Kentucky; that he organized a corporation in 1929 known as the Inter-State Oil & Gas Corporation, and that he had the entire capital stock issued to his three brothers-in-law, Dewey Daniel, C. V. Cooper, and J. R. Tinsley, to hold and vote same for his use and benefit as he directed, and had them elected directors of the corporation to act as such for his use and benefit and as he directed, and that they continued to act as such directors until his death; that in order to conceal his ownership of the oil and gas leases he had the legal title thereto placed in the name of the corporation which he controlled, and that such corporation held the legal title to the leases exclusively for the use of W. M. Pursifull, and that he was the equitable owner thereof and was entitled to and did receive the entire production and

profits therefrom. It was further alleged that in order to facilitate the transaction of business in the name of the corporation, W. M. Pursifull had a large number of blank forms of assignment printed and had the president and secretary of the corporation to affix their signatures thereto, and that these blank forms of assignment were retained by Pursifull and were used by him in transferring oil and gas leases standing in the name of the corporation. It was alleged alternatively (1) that on August 6, 1937, W. M. Pursifull prepared a written assignment in the name of the Inter-State Oil & Gas Corporation as grantor whereby all of his interests in the respective oil and gas leases were transferred to his brother, James M. Pursifull, as grantee; that the assignment was attempted to be perfected and completed by the use of one of the blank assignments which had been previously executed by the president and secretary of the corporation; that the assignment was retained by W. M. Pursifull and was not delivered to his brother until December, 1938, and was not recorded until January 12, 1939, and that same was executed and delivered without consideration; or (2) that between December, 1938, and the death of W. M. Pursifull on February 16, 1939, and while he was in a hospital in Louisville, Kentucky, the assignment was prepared without his knowledge or consent by his secretary; that the assignment was a forgery and was prepared and delivered through the collusion and connivance of W. M. Pursifull's secretary and James M. Pursifull in order to defeat the rights of the widow and heirs at law of W. M. Pursifull; that W. M. Pursifull's secretary falsely and fraudulently attached a certificate to the assignment purporting to show that same had been acknowledged before her as a notary public when, as a matter of fact, it was never signed or acknowledged by either of the officers of the corporation in her presence. It was further alleged that the assignment was executed without any consideration and was fraudulent and void, and that the plaintiff had no knowledge thereof until long after her husband's death and that she was entitled to dower in all of the property attempted to be transferred to James M. Pursifull regardless of the validity or the invalidity of the assignment. The third amended petition contained these allegations:

"They say that all of the other oil and gas leases mentioned in the original petition were executed and

delivered for valuable considerations, and it was expressly provided in said leases that 'the Lessor does hereby grant, lease and sell unto the Lessee all oil and gas in and under' the respective tracts of land described therein, and also said respective tracts of land 'for the purpose of entering upon, operating and handling and removing therefrom said oil and gas,' and they say that it was further provided in each of said leases that the same should remain in full force and effect so long as oil or gas was found on the respective tracts of land described therein. They say that by the terms and provisions of the last mentioned leases the Lessors granted and sold unto the Lessee, and his assignees, all oil and gas in and under the tracts of land covered thereby, and also said tracts of land for the purpose of entering upon, operating, handling and removing said oil and gas therefrom so long as oil or gas was found thereunder.''

In this state a widow is entitled to dower in mineral leases owned by her husband. Trimble v. Kentucky River Coal Corporation, 235 Ky. 301, 31 S. W. 2d 367; Commonwealth v. Elkhorn-Piney Coal Mining Company, 241 Ky. 245, 43 S. W. 2d 684. If the allegations of the petition as amended are true, W. M. Pursifull was the equitable owner of the leases in question. The legal title was in the Inter-State Oil & Gas Corporation, and it held the property in trust for the equitable owner. KRS 392.020 reads:

"After the death of either the husband or wife, the survivor shall have an estate for his or her life in one-third of all the real estate of which the other spouse or anyone for the use of the other spouse, was seized of an estate in fee simple during the coverture, unless the survivor's right to such dower or interest has been barred, forfeited or relinquished.''

In Chalk v. Chalk, 291 Ky. 702, 165 S. W. 2d 534, the legal title to certain real estate was held by the son of Jule Chalk as security for moneys advanced to the father by the son. In a suit by the widow of Jule Chalk in which she sought dower in the real property, title to which was held by decedent's son, it was held that the son was seized of an estate in fee simple for the use of his father within the meaning of the statute conferring right of dower on the widow. In the course of the opinion it was said (291 Ky. 702, 165 S. W. 2d 536):

"So our statute in relation to dower may be said

to read that a husband or wife of a decedent has an estate for life in one-third of all the real estate which the other spouse owned or anyone owned for his or her use during coverture."

And further:

"It may be observed that there is a distinction between a husband's mere equity in land or the holding of title as an agent or trustee and an equitable title of a character that entitles him to have or enforce a conveyance of the legal or fee simple title, i.e., when he is seized of a beneficial interest. Bartlett v. Gouge, 5 B. Mon. 152, 44 Ky. 152; Gully v. Ray, 18 B. Mon. 107, 57 Ky. 107; McIlvaine v. McIlvaine, 10 Ky. Op. 181. The decedent Jule Chalk, had such title. Therefore, it makes no difference whether it should be held that the decedent had legal title to the property subject to the liens of his son, or that he owned an equitable title, for it is manifest that the son 'was seized of an estate in fee simple' for the use of the father. That being the condition, the widow had dower in it. The wife's inchoate right of dower attached when the property was acquired, and not having joined in the conveyance of the part sold in 1929, her potential right became consummated as a vested one at the husband's death and the widow is entitled to have it recognized."

In the absence of a specific statute there is some conflict in the decisions as to whether a widow is entitled to dower in an equitable estate of her husband, but, as said in 17 Am. Jur., Dower, sec. 39: "A freehold interest as cestui que trust is now recognized as an adequate basis for dower, since in many states the statutes specifically or by necessary implication provide for dower in equitable estates, or, as some of the authorities put it, a dowable quality is imparted to trust estates by the statutes."

The judgment is reversed, with directions to overrule the demurrer to the petition as amended.