# Van Camp v. Evans et al.

October 3, 1947.

Rehearing denied December 19, 1947.

Sidney B. Neal, Judge.

Thomas E. Sandidge for appellant.

Fowler & Holbrook, O. L. Fowler and R. Miller Holland for appellees.

OPINION OF THE COURT BY CLAY, COMMISSIONER—Affirming.

This suit was brought by appellant for an accounting and for the assignment of dower in an oil and gas lease. Appellees, who were defendants below, are assignees of interests in the lease or purchasers of oil produced thereunder. The lower Court sustained general demurrers to appellant's petition as amended.

We will briefly summarize the allegations of appellant's pleadings: Appellant is the widow of W. M. Pursifull, who died intestate on February 16, 1939. At the time of his death he was the equitable and beneficial owner, as lessee, of all property and rights created by an oil and gas lease executed on July 5, 1929, by one Davis and others to "J. R. Tinsley, as Trustee." The consideration for this lease was paid by appellant's husband, the lease was held for his use and benefit, and he was the real owner thereof. Tinsley "as Trustee," on August 12, 1929, made a written assignment of a half interest in this lease to certain appellees, and thereafter percentages of this half interest were assigned to other appellees. Appellant was not a party to the assignment of August 12, 1929, or the other assignments, and has not released or forfeited her dower in or to the gas and oil produced under the lease, nor has she been assigned dower in any part of the estate of her husband. Appellees had notice or knowledge that Tinsley held this lease as Trustee for her husband or someone else,

and they were not bona fide purchasers for value. The terms of the lease have been complied with, and oil in paying quantities has been produced thereunder.

Appellant demands an accounting of the oil produced, prays judgment for a third of the proceeds, and requests assignment of a third interest as dower in the future production under the lease.

The instrument creating the estate in which appellant claims a dower interest is designated an "Oil and Gas Lease." It provides that "the lessors do hereby lease, grant and sell unto the lessee all oil and gas in and under the following described tract of land for the purpose of entering upon, operating thereon and removing therefrom said oil and gas for the term hereinafter specified * * *." The lessee covenants and agrees to begin a well on the premises "within fifteen days from the date that lessors owning sixty-five percent of the fee simple title to the land" have executed the lease, and to begin other wells on the premises within specified periods of time. It is provided that the lease "shall be forfeited for failure to comply with conditions of drilling as provided herein," and that the assignees of an interest in the lease may keep it "alive" by drilling as therein provided. A royalty of one-eighth of the oil and gas is reserved. No term is specified for the duration of the lease.

The fundamental question raised on this appeal is whether or not a husband's interest as lessee in an oil and gas lease is real estate of which he was "seized of an estate in fee simple" during coverture, entitling his widow to dower therein. KRS 392.020.

In order to narrow the question before us, we may point out that appellees, who deny the right of dower in this case, admit that: (1) The rights of a lessee under an oil and gas lease constitute *an interest in real estate,* and (2) a widow is entitled to dower in the *lessor's* interest in such lease.

It is appellees' contention, however, that the interest of the *lessee* under an oil and gas lease is something less than an estate *in fee simple.*

At the outset, we recognize that the nature and extent of rights created by and under oil and gas leases

have led the courts in many jurisdictions to all types of definitions and decisions. Questions have been raised as to whether or not these leases are what they purport to be or whether they are deeds, licenses, sales or optional contracts; whether the interests created are corporeal or incorporeal; whether they are in the nature of a profit a prendre or a chattel real; and whether or not oil and gas, being fugacious substances, may be owned as real estate or may, or must be, classed as personalty because their ownership cannot be realized until reduced to possession.

It is clear that our problem may not be solved simply by giving a formal name to the instrument under which these rights are created, nor by the expedient of formally classifying those rights. Let us examine the substance of the "Oil and Gas" Lease involved in this controversy.

The instrument purports to "lease, grant, and sell" the oil and gas in and under the premises described, together with the right to use the premises for the purpose of entering upon and removing same. If this were all the instrument contained, we would be constrained to decide that the lessee or grantee had been conveyed a fee simple interest in real estate. This is the substance of our decision in the case of Trimble et al. v. Kentucky River Coal Corporation et al., 235 Ky. 301, 306, 31 S. W. 2d 367. In that case one Eversole had purchased outright the coal, minerals, oils and gases underlying certain property, together with mining rights and privileges. We recognized that the purchaser of oil and gas underlying realty may acquire more than the right to go upon the property and take the designated substances. We held that this particular purchaser had the ownership of the substances in place, and the grant without qualification created a fee simple interest in real estate.

It is obvious, however, that the instrument before us is something less than an outright conveyance of property. The grant is specifically "for the purpose of" entering, operating, and removing oil and gas. One of its outstanding features is that the lessee may lose all his potential rights by failure to begin promptly operations for the production of those substances.

Whether or not this particular lease is governed by Chapter 353, Kentucky Revised Statutes, which provides for a forfeiture or automatic expiration of oil and gas leases, it is not necessary to decide. Nor is it necessary to decide whether or not the lease may be forfeited or terminated by failure to carry out implied obligations with respect to drilling additional wells, producing oil or gas in commercial quantities, or failure to carry on operations within a reasonable time where no time limit is specified.

The underlying objective of this instrument is that the lessee shall engage in the production of oil and gas. His failure to do so within the time limits prescribed will constitute a forfeiture or abandonment of his interest in the property. Because of the purpose of the instrument, the obligations of the lessee, and the possibility of its abandonment, the lessee does not have an absolute and entire estate in the property.

Let us examine the nature of a fee simple estate. In the case of Slayden v. Hardin et al., 257 Ky. 685, at page 686, 79 S. W. 2d 11, 12, a fee simple was defined as follows:

"In the acquisition of a fee-simple title to land, one gets an estate unlimited as to duration, disposition, and descendibility. It must be an estate that may last forever; it must have no termination. It must be one the recipient may dispose of as he chooses by will, deed, or otherwise."

1 Bouv. Law Dict., Rawle's Third Revision, p. 1199, defines "fee-simple estate" as follows:

"It is the largest possible estate which a man can have, being an absolute estate. It is where lands are given to a man and to his heirs absolutely, without any end or limitation put to the estate."

Minor Institutes, Vol. 2, page 72, defines a fee simple estate as follows:

"An estate in fee simple is the entire and absolute property of the subject and, therefore, when one grants such an estate, he can make no further disposition of the property, (save by way of substitution) for he has already granted the whole and entire interest that it is

possible for him to have, and consequently nothing remains in him.''

Restatement, ''Property,'' Vol. 1, Sec. 14, states:

''An estate in fee simple is an estate which (a) has a duration (i) potentially infinite; or (ii) terminable upon an event which is certain to occur but is not certain to occur within a fixed or computable period of time or within the duration of any specified life or lives; or (iii) terminable upon an event which is certain to occur, provided such estate is one left in the conveyor, subject to defeat upon the occurrence of the stated event in favor of a person other than the conveyor * * *.''

19 Am. Jur., ''Estates,'' Sec. 14, gives the following definition:

''The term 'fee simple' defines the largest estate in land known to the law and necessarily implies absolute dominion over the land. There can be only one estate in fee simple to a particular tract of land. It is an estate of inheritance unlimited in duration, descendible to all the heirs of the owner alike to the remotest generations, and, aside from the fact that it may be created so as to be defeasible and subject to executory limitations or granted or devised subject to a condition subsequent, it is, with respect to its duration and enjoyment as an interest in property, clear of any qualification or condition.''

In view of the above definitions, we have difficulty in finding that the lessors relinquished entire dominion over this property or that the lessee acquired a complete and absolute and permanent estate. The grant is coupled with a vital obligation on the part of the lessee. If the lessee had the absolute and entire estate in this property, he could not be required to develop it nor could he abandon it. If non-user divests him of his estate, then he did not have a totality of rights in the property to begin with.

In Crain v. Pure Oil Co., 8 Cir., 25 F. 2d 824, the question was whether or not failure to develop oil and gas under an ''Oil and Gas Deed'' constituted an abandonment of the grantee's rights thereunder. While the instrument conveying the estate was in the form of a deed, the Court found that the grantee did not have

complete and perpetual ownership of the property, and failure to develop it cancelled his rights therein. In so deciding the Court stated, 25 F. 2d at page 829:

"If this instrument is a deed, then it is immaterial whether any development ever takes place; the mineral rights are grantee's, and he may do as he chooses with them. If a lease, there is something for lessee to do, and that is attempt to discover and develop oil and gas within a reasonable time."

This Court has on two occasions differentiated between an outright conveyance, such as existed in the Trimble case (Trimble et al. v. Kentucky River Coal Corporation et al., 235 Ky. 301, 31 S. W. 2d 367), and a lease which restricts the estate acquired by the lessee. In Swiss Oil Corp. v. Hupp, 253 Ky. 552, at page 564, 69 S. W. 2d 1037, 1043, we stated: "But the right of such lessee is limited to exploring and producing, and he does not acquire any title to the oil until it has been taken from the ground." To the same effect is our decision in the case of Hurst v. Paken Oil Company, 287 Ky. 257, 152 S. W. 2d 981.

Whether or not we decide that under the instrument involved in this case the rights of the lessee are restricted to exploration and production, it is our opinion that the necessity for such activity in acquiring effective ownership of the oil and gas qualifies, restricts, and reduces the estate granted.

We think it significant that the instrument provided that it might be kept "alive" by an assignee. This provision is contrary to the concept of a fee simple estate. A fee simple is absolute, complete and self-sufficient. An estate which must be nourished or kept alive by the grantee is obviously conditional, or qualified, or limited. This element of insecurity, implicit in the grant, impairs the totality and permanency of the estate. It is not, then, a fee simple.

The conclusion we have reached appears at first glance inconsistent with a statement made in the case of Pursifull's Adm'x v. Pursifull et al., 299 Ky. 245, 184 S. W. 2d 967. On page 248 of the opinion in 299 Ky.; on page 969 in 184 S. W. 2d, we stated: "In this state a widow is entitled to dower in mineral leases

owned by her husband.'' We have re-examined the original record in that case and find that the question involved here was not in issue. The proposition presented was whether or not a fraudulent conveyance of a husband's interest in oil and gas leases (whether as lessor or lessee), of which he was the equitable owner, could defeat the widow's dower rights. The instruments referred to in the petition were not filed as exhibits, and they apparently were considered as outright sales of the oil and gas in place. Whether or not this was the actual situation, the quoted statement was not necessary to the decision reached, and we do not consider it controlling.

Our decision on the fundamental issue in this case makes it unnecessary to consider other questions so ably briefed by counsel.

For the reasons hereinabove stated, it is our conclusion that appellant's husband did not, nor did anyone for his benefit, have an estate in fee simple in the property or rights created under the oil and gas lease involved in this action; and the order of the Daviess Circuit Court, sustaining the general demurrers to appellant's petition as amended and dismissing same, was proper. The judgment is therefore affirmed.